D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LOUIS MARTIN,

                    Petitioner,

       -against-

ROBERT E. ERCOLE, *Superintendent of Green Haven Correctional Facility*,

                    Respondent.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-933 (NGG)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 13 2011 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Louis Martin ("Martin") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2003 convictions in the County Court of Nassau County for robbery in the first degree, robbery in the second degree, criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree. (Pet. (Docket Entry #1).) For the reasons set forth below, the petition is denied.

## I. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

1

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions." Rodriquez v. Miller, 537 F.3d 102, 107 (2d Cir. 2007); see also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

A state court's finding of procedural default, absent certain exceptions, bars a federal court from granting habeas relief. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Edwards v. Carpenter, 526 U.S. 446, 451 (2000). To overcome such a default, a petitioner must

demonstrate either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Id. at 750. A state court holding that a claim is *both* procedurally barred and without merit is sufficient to invoke a state procedural bar. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

A pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

## II. BACKGROUND

### A. The Robbery and Arrest

On March 13, 2002, Martin robbed the Roslyn Savings Bank in West Hempstead, New York with two accomplices. (Noll Aff. (Docket Entry #5) at 2.) Martin was armed with an assault rifle while one of his accomplices was armed with a .45 caliber handgun that he received from Martin. Trial Tr. at 794-95, People v. Martin, Ind. No. 684N-2002 (N.Y. Cnty. Ct., Nassau Cnty. April 28, 2003).

After the robbery, Martin and his accomplices fled in a white Oldsmobile, and then changed cars, continuing their escape in a green minivan. Id. at 806-07. Police later arrested Martin entering the green minivan. Id. at 873-77. After being arrested, the police searched Martin and found $1,480.00 in cash on his person. Id. at 881. Police then searched the green minivan and discovered "clothing, ski masks, and coins." Id. at 619-24.

3

## B. The Trial

On March 25, 2002, Martin was indicted by a Nassau County Grand Jury for two counts of robbery in the first degree, two counts of robbery in the second degree, criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree. (Resp't Mem. (Docket Entry #5) Ex. B at 1.) Prior to trial, Martin moved to suppress all of the evidence, including the evidence recovered from the green minivan on the grounds that there was no probable cause for his arrest and that the search of his minivan did not properly fall with an exception to the warrant requirement. (Noll Aff. at 3.) The County Court held a suppression hearing on September 16 and 25, 2002, where it refused to suppress the evidence. Hr'g Tr., People v. Martin, Ind. No. 684N-2002 (N.Y. Cnty. Ct., Nassau Cnty. Sept. 16 & 25, 2003).

Over the course of Martin's trial, there were several delays, the longest of which was an adjournment from September 27, 2002 through January 27, 2003 (122 days). (Pet. at 18-19.) In his opening statements, the prosecutor mistakenly referenced DNA evidence against Martin that did not actually exist. Trial Tr. at 367; 379. Upon discovery of the misstatement, the defense moved for a mistrial. Id. at 737-52. The trial judge denied the motion and gave a curative instruction to the jury. Id. at 840-41. Also during Martin's trial, the trial judge called a juror to a sidebar and made an inquiry as to whether or not that juror had been sleeping. Id. at 452. The trial judge said that he had noticed the juror closing his eyes but the juror repeatedly denied that he was sleeping. Id. The defense did not object. Id. Later, Martin's girlfriend testified that she once saw Martin in possession of the same kind of handgun used in the robbery by Martin's accomplice. Id. at 706-08. On May 13, 2003, a jury convicted Martin on all counts. Id. at 1310-13.

### C. Petitioner's Appeals

On June 30, 2005, Martin appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department. (See Resp't Mem. Ex. C.) Martin presented three main arguments before the Second Department. First, Martin argued that his statutory speedy trial rights were violated. (Id. at 17.) Second, Martin argued that his Fourth Amendment rights were violated when the police searched the green minivan. (Id. at 20.) And third, Martin argued that he was denied a fair trial in light of the prosecutor's misstatement, his girlfriend's testimony, and the alleged sleeping juror. (Id. at 22.) On April 11, 2006, the Second Department affirmed Martin's conviction. People v. Martin, 813 N.Y.S.2d 207 (2006). Regarding Martin's state-law speedy-trial claim, the Second Department found that "the People were ready for trial within the six-month period prescribed in [New York Criminal Procedure Law § 30.30 (1)(a)]." Id. at 208. Regarding Martin's Fourth Amendment claim, the Second Department concluded that "[t]he search of the defendant's vehicle by the police was a proper warrantless search pursuant to the automobile exception." Id. at 208-09.

As for Martin's fair trial claims, the court concluded that the testimony of Martin's girlfriend was properly admitted under New York State evidentiary rules, but did not discuss whether it was unconstitutionally prejudicial. Id. at 209. Regarding Martin's sleeping juror claim, the court concluded that "[t]he defendant's contention that the court improperly handled an allegedly sleeping juror is unpreserved for appellate review and, in any case, is without merit." Id. (citing to N.Y. Crim. Proc. Law § 470.05; People v McIntyre, 597 N.Y.S.2d 442 (1993)). Finally, the court concluded that "the improper comment by the prosecutor during his opening statement was harmless in light of the curative instruction give by the court and the overwhelming evidence of the defendant's guilt." Id.

On February 1, 2006, Martin filed for leave to appeal with the New York Court of Appeals. (Noll Aff. at 5.) On July 12, 2006, the Court of Appeals denied Martin's application for further appellate review. People v. Martin, 7 N.Y.3d 791 (2006).

On April 27, 2007, Martin filed a motion to vacate his conviction under New York Criminal Procedure Law § 440.10, claiming that certain evidence was procured in violation of his state and federal constitutional rights, and that he was denied effective assistance of counsel in violation of his Sixth Amendment right. (Resp't Mem. Ex. E.) He also claimed that he was denied his Sixth Amendment right to a speedy trial. (Id.) On August 17, 2007, the County Court denied Martin's motion in its entirety, concluding that Martin's three state-law claims were based entirely on the trial record and, therefore, were procedurally barred under New York Criminal Procedure Law § 440.10(2)(c). (Resp't Mem. Ex. H.) The County Court did not discuss Martin's Sixth Amendment speedy trial claim. (See id.) On February 29, 2008, Martin filed the instant petition. (Pet.)

### III. DISCUSSION

#### A. Speedy Trial Claims

Construed liberally, Martin's petition asserts that both his state and federal speedy trial rights were violated. (Id. at 5-6; 18.)

##### 1. State Speedy Trial Claim

Martin asserts that his speedy trial right under New York Criminal Procedure Law § 30.30 was violated because he alleges that the prosecution was not "ready for trial" within the allotted statutory time frame. (Id. at 5-6.) Under New York law, "trial readiness" is governed by New York Criminal Procedure Law § 30.30. Federal habeas corpus relief however, is available only if the petitioner's imprisonment is "in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). New York's Criminal Procedure Law § 30.30 sets forth a statutory time frame in which the State of New York must be ready for trial; it is not, however, "a statutory embodiment of the constitutional guarantee to a speedy trial." Gibriano v. Att'y Gen. of N.Y., 965 F. Supp. 489, 492 (S.D.N.Y. 1996) (citation omitted). A petitioner who bases a speedy trial claim entirely on a violation of his statutory § 30.30 rights has only alleged an error of state law that is not cognizable on federal habeas review. Stewart v. New York, No. 04-CV-4426 (RJD), 2008 WL 2566379, at *1 (E.D.N.Y. June 26, 2008). Martin's statutory speedy trial claim therefore fails.

### 2. Federal Speedy Trial Claims

Martin also contends that his Sixth Amendment right to a speedy trial was violated because the trial court "erroneously excluded" 122 days from the computation of time chargeable to the prosecution.[1] (Pet. at 18.) Martin briefly raised this issue in his § 440.10 motion, (Resp't Mem. Ex. E at 22), although the County Court did not address it in its order. (See Resp't Mem. Ex. H.) Where a state court silently rejects a federal claim, the reviewing federal habeas court must identify whether the disposition of the federal claim "fairly rests" on federal or state law grounds. Jimenez v. Walker, 458 F.3d 130, 137 (2d Cir. 2006).

In Jimenez, the Second Circuit laid out three "clues" to help in determining whether a state court's adjudication of a federal claim fairly appears to rest on federal law or is interwoven with federal law: "(1) the face of the state-court opinion, (2) whether the state court was aware of a [state] procedural bar, and (3) the practice of state courts in similar circumstances." Id. at 139. (citing Quirama v. Michele, 983 F.2d 12 (2d Cir. 1993)). Where these clues suggest that the

---

[1] Martin's petition mistakenly states that the People should be charged with 132 days because of a miscalculation in the time between September 27, 2002 and January 27, 2003—a total of 122 days.

7

state court opinion "fairly rests" on an issue of federal law, the habeas court gives the state court's rejection of the federal claim its due deference under AEDPA. See Jimenez, 458 F.3d at 145. Where these clues suggest that the opinion "fairly rests" on an issue of state procedural law, however, the habeas court does not give the state court rejection of the federal claim deference. Id. Rather, the habeas court reviews the state court's silent rejection of the federal claim under pre-AEDPA standards. Id.

Here, we conclude that the County Court's opinion "fairly rested" on an issue of state procedural law. The face of the County Court opinion was completely silent on Martin's federal speedy trial claim. The opinion stated that "[t]he defendant raises *three* grounds in support of his instant application to vacate his convictions . . ." (Resp't Mem. Ex. H) (emphasis added). The opinion proceeded to deny the three acknowledged claims while ignoring Martin's fourth, federal speedy trial claim. (See Resp't Mem. Ex. H.) Further, the opinion disposed of the remainder of Martin's three claims on state procedural grounds. (See id.) The County Court concluded that Martin's claims were procedurally barred by New York Criminal Procedure Law § 440.10(2)(c), forbidding "record-based" claims on § 440.10 motions. (Id.) This same bar is also used to dispose of federal speedy trial claims. See People v. Peasley, 16 Misc. 3d 1131(A) (N.Y. Cnty. Ct. Essex Cnty. Aug. 24, 2007), 2007 WL 2437170, at *5; People v. Abraham, 30 Misc.3d 1240(A) (N.Y. Sup. Ct. Mar. 23, 2011), 2011 WL 1017913, at *2. The first Jimenez clue strongly suggests that Martin's federal speedy trial claim was not decided on the merits, while the second two Jimenez clues suggest that the state court opinion "fairly rested" on an issue of state law.

Assuming that the opinion rested on state procedural law grounds, the People have waived their right to argue that there is an adequate and independent state ground barring habeas

review because they have failed to raise that argument in this habeas proceeding. See Jimenez, 458 F.3d at 150, n.17 (citing Trest v. Cain, 522 U.S. 87 (1997)). Accordingly, we review Martin's federal speedy trial claim under pre-AEDPA standards. See Jimenez, 458 F.3d at 145. "Under pre-AEDPA standards the factual findings of the state courts were 'presumed ... correct' absent special circumstances listed in the statute" and "pure questions of law and mixed questions of law and fact were reviewed de novo." Washington v. Schriver, 255 F. 3d 45, 55 (2001). A petitioner's claim that his constitutional speedy trial rights were violated is assessed using four factors: (1) the length of the delay between the criminal prosecution's commencement and the start of the trial; (2) the reason for the delay; (3) whether the defendant has asserted his right; and (4) the nature of the prejudice to the defendant incurred from the delay. Dolan v. Donelli, No. 06-CV-5891 (JS), 2010 WL 5491101, at *12 (E.D.N.Y. Dec. 30, 2010) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Until there is some delay that is presumptively prejudicial to the petitioner, no further inquiry into the remaining factors is required. Barker, 407 U.S. at 530. Furthermore, it is clear that a defendant "cannot exploit a delay which is attributable primarily to his own acts or to which he has consented." United States v. Lustman, 258 F.2d 475, 477 (2d Cir. 1958) (citing Pollard v. United States, 352 U.S. 354 (1957)). Where a defendant in state court consents to a delay, he is deemed to have waived his constitutional right to a speedy trial. See e.g., U.S. v. Kabot, 295 F. 2d 848, 852-53 (2d Cir. 1961); Georgiadis v. Superintendent, Eastern Corr. Facility, Napanock, N.Y., 450 F. Supp. 975, 980 (S.D.N.Y. 1978).[2]

Martin was arrested on March 13, 2002. Trial Tr. at 873-77. He was indicted on March 25, 2002. (Resp't Mem. Ex. B at 1.) The prosecution claimed readiness at Martin's arraignment

---

[2] The court notes that Zedner v. United States, 547 U.S. 489, 501-02 (2006), which holds that *federal* defendants may not waive their speedy trial rights applies only to federal *statutory* speedy trial rights under 18 U.S.C. § 3162, not federal *constitutional* speedy trial rights.

on April 1, 2002. (Resp't Mem. Ex. D at 14.) A suppression hearing was held on September 16 and 25, 2002. See Hr'g Tr. at 1; 163. An adjournment took place between September 27, 2002 and January 27, 2003 which Martin asserts constituted a delay which deprived him of his right to a speedy trial under the United States Constitution. (Pet. at 18.) Martin's trial commenced on April 30, 2003. See Trial Tr. at 3. In a decision dated April 11, 2006, the Second Department found that it was "clear from the record that defense counsel consented to the adjournment from September 27, 2002 until January 27, 2003" (122 days). Martin, 813 N.Y.S.2d at 208.

Martin alleges that the 122 days between September 27, 2002 and January 27, 2003 should have been charged to the prosecution. (Pet. at 18.) This Court defers to the Second Department's finding of fact that Martin consented to the delay between September 27, 2002 and January 27, 2003 (122 days). Schriver, 255 F. 3d at 55. Martin's consent clearly constitutes an effective waiver of his right to bring a speedy trial claim for this delay. See Lustman, 258 F.2d at 477; Steiner v. Comm'r of Corr., 490 F. Supp. 204, 210 (S.D.N.Y. 1980); Aguilar v. Ryan, No. CV-08-1650 (PHX) (FJM), 2009 WL 2970621 (D. Ariz. Sept. 11, 2009), at *4-6.

Moreover, Martin "has shown the length of the delay, but has not shown how any of the other factors demonstrate a deprivation of his right." Boddie v. Edwards, No. 97 Civ.7821 (MGC), 2005 WL 914381, at *11 (S.D.N.Y. April 20, 2005). Thus, he failed to show that he has been deprived of his Sixth Amendment right to a speedy trial. Accordingly, Martin's constitutional speedy trial claim is without merit and is therefore denied.

### B. Claim of Unreasonable Search and Seizure of Martin's Automobile

Martin asserts that his Fourth Amendment rights against unreasonable search and seizure were violated when the People introduced evidence at trial recovered from the green minivan, including a ski mask and a roll of quarters from the bank that had been robbed. (Pet. at 8.) Prior

to Martin's trial, the County Court held a suppression hearing pursuant to New York Criminal Procedure Law § 760.10 on September 16 and 25, 2002, where it refused to suppress the evidence. See Hr'g Tr.

"[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Federal courts will review Fourth Amendment claims in habeas petitions in only one of two instances: (1) "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations," or (2) "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d. Cir. 1977).

Suppression hearings under New York Criminal Procedure Law § 710.60 constitute facially adequate procedures for redressing alleged Fourth Amendment violations. Capellan, 975 F.2d at 70 n. 1. Because Martin availed himself of such a hearing, and because nothing in Martin's petition suggests that there was an unconscionable breakdown during his hearing, Martin's Fourth Amendment claim is not entitled to habeas review by this court. See Stone, 428 U.S. at 494; Capellan, 975 F.2d at 70.

### C. Claim of Deprivation of a Fair Trial in Violation of Due Process

Martin asserts that his constitutional right to due process was violated because he was not afforded a fair trial. (Pet. at 10.) Martin points to three reasons for this assertion: one, a juror appeared to be sleeping during his trial; two, that his girlfriend's testimony was

unconstitutionally prejudicial; and three, that the prosecutor referenced DNA evidence against Martin during his opening statement that did not exist. (Id.)

### 1. The Sleeping Juror

Martin asserts that he was deprived of a fair trial in violation of his constitutional due process rights because a juror appeared to be sleeping during his trial. (Id.) On direct appeal, the Second Department concluded that the sleeping juror claim was "unpreserved for appellate review and, in any case, without merit." Martin, 813 N.Y.S.2d at 209 (internal citations omitted). Federal habeas review is not available where a state court has rejected a constitutional claim on the basis of "adequate and independent" state law grounds. Harris v. Reed, 489 U.S. 255 (1989). Under Harris, federal habeas review is restrained "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." Id. Nonetheless, a petitioner can withstand the bar of adequate and independent state grounds if he can show cause for [a procedural] default and resulting prejudice, see Wainwright v. Sykes, 433 U.S. 72, 87 (1977), or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 495 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). Denials of a claim under New York Criminal Procedure Law § 470.05(2), constitute adequate and independent state law grounds that prevent federal habeas review. See Velasquez v. Leonard, 898 F.2d 7, 9 (2d Cir. 1990).

Here, the Second Department concluded that Martin's claim pertaining to the "sleeping juror" was not preserved for appellate review under New York Criminal Procedure Law § 470.05(2). Consequently, this court is barred from considering the claim as the decision of the Second Department is based on an adequate and independent state law ground. See Velasquez, 898 F.2d at 9. Nothing in Martin's petition shows that there was any cause for the procedural

default or that failure to consider his claim will result in a "fundamental miscarriage of justice." Therefore, Martin's claim is not entitled to federal habeas review.

### 2. Prejudicial Testimony

Martin alleges that his girlfriend's testimony concerning his prior ownership of a .45 was unconstitutionally prejudicial. (Pet. at 10.) On direct appeal, the Second Department concluded that Martin's girlfriend's testimony was "properly admitted," citing several New York cases which supported the decision on state evidentiary grounds. Martin, 813 N.Y.S.2d at 209.

As discussed earlier, where a state court denies a *federal* claim without opinion, the reviewing habeas court must identify the ground on which the state court's decision lies in order to know how to proceed. Application of the three Jimenez clues allows the court to make this determination. "(1) the face of the state-court opinion, (2) whether the state court was aware of a [state] procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez, 458 F.3d at 139. Where these clues suggest that the state court opinion rested on federal law, habeas review is permitted, and AEDPA-deference is given. Id. at 145. Where these clues suggest that the opinion was decided based on state procedural law, no AEDPA-deference is given, and the habeas court reviews the claim de novo. Id.

Here, the face of the state court opinion is silent as to Martin's federal prejudicial testimony claim. The opinion states that the testimony of Martin's girlfriend was "properly admitted," and cites several cases in support of its conclusion, all of which are state cases that provide substantive, state evidentiary rules. Martin, 813 N.Y.S.2d at 209.

Regarding the second and third Jimenez clues, the cases cited in support of the Second Department's conclusion do not dictate state procedural bars, but substantive evidentiary law. Elsewhere in the opinion, the Second Department did dispose of Martin's sleeping juror claim on

13

state procedural grounds, specifically that it was not preserved for appellate review. See Martin, 813 N.Y.S.2d at 209 (citing N.Y. Crim. Proc. Law § 470.05). This procedural bar was not applied to Martin's claim that his girlfriend's testimony was unconstitutionally prejudicial because Martin did in fact object during trial. Trial Tr. at 706-07. The three clues are not conclusive as to whether the disposition of Martin's prejudice claim rested on a state procedural bar or on federal law. Nonetheless, it is clear that the state court's decision did not rest on state procedural grounds. Therefore, we conclude that the Second Department's adjudication of Martin's federal prejudicial testimony claim fairly appears to rest on or be interwoven with federal law. See Jimenez, 458 F.3d at 139 ("when examining the basis of a state court's adjudication of a federal claim, a federal habeas court in this circuit should examine the three clues . . . to classify the decision as either: (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law or (2) fairly appearing to rest primarily on state procedural law."). Accordingly, we give the Second Department's decision AEDPA-deference and review the merits of Martin's claim.

"The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." Keane, 137 F.3d at 125 (quoting Estelle v. McGuire, 502 U.S. 62, 69 1991)). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'"

Keane, 137 F.3d at 125 (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). In determining whether the prejudicial evidence is sufficiently material, the Court must examine the evidence "in light of the entire record before the jury." Id.

Here, Martin's girlfriend's testimony was probative of an essential element in the case. Martin was charged under the New York statute for the crime of Robbery in the First Degree, which states that "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, *he or another participant in the crime* . . . is armed with a deadly weapon." N.Y. Penal Law § 160.15 (emphasis added). Evidence at trial proved that Martin's accomplice was armed with the .45 caliber handgun that he received from Martin. See Trial Tr. at 794-95. Martin's girlfriend's testimony was therefore probative of the element that Martin "or another participant in the crime" was armed with this specific gun.

Moreover, the testimony clearly did not "provide the basis for conviction" or "remove a reasonable doubt that would have existed on the record without it" in light of the abundance of evidence against Martin. As the Second Department found, the evidence of Martin's guilt was "overwhelming." Martin, 813 N.Y.S.2d at 209. The prosecution presented many witnesses and introduced an array of incriminating physical evidence, including the testimony of one of Martin's accomplices who testified that Martin gave him the .45 caliber handgun for use in the robbery. Trial Tr. at 794-95. The prosecution also introduced evidence recovered from the green minivan including ski masks and a roll of coins from the Roslyn Saving Bank. See id. It is clear that Martin's girlfriend's testimony was far from the center-piece of the prosecution's case. Therefore, the Second Department did not unreasonably apply the standard set forth in Estelle, and Martin's claim fails.

### 3. The Prosecutor's Misstatement

Martin contends that he was unconstitutionally deprived of a fair trial because the prosecutor referenced DNA evidence against Martin in his opening statement that did not exist. (Pet. at 10.) At trial, after argument from the parties, the judge gave the following curative instruction:

> [D]uring the District Attorney's opening statement, he stated words to the effect that DNA evidence would connect the defendant to the stolen white Oldsmobile. I am instructing you, number one, as I have said all along, opening statements are not evidence. And I am telling you now, that there will be no evidence through DNA connecting the defendant to the white Oldsmobile. So you're to disregard that opening comment, that opening statement by the Assistant District Attorney.

Trial Tr. at 840-41. On direct appeal, the Second Department concluded that "the improper comment by the prosecutor during his opening statement was harmless in light of the curative instruction given by the court and the overwhelming evidence of the defendant's guilt." Martin, 813 N.Y.S.2d at 209 (internal citations omitted).

"Generally, inappropriate prosecutorial comments, standing alone, are insufficient to reverse a conviction." Duran v. Miller, 322 F. Supp. 2d 251, 259 (E.D.N.Y. 2004) (citing United States v. Young, 470 U.S. 1, 11 (1985)). A prosecutor's misstatement will require reversal of a State Court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and therefore, deny the defendant his right to due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Relevant factors to be considered in this determination include: the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir.1990)). There is a presumption that curative instructions will eliminate any potential prejudice resulting from a prosecutor's misstatement. See U.S. v. Tutino, 883 F.2d 1125, 1137 (2d Cir. 1989) (citing United States v.

Coffey, 823 F.2d 25, 28 (2d Cir.1987); United States v. Pena, 793 F.2d 486, 491 (2d Cir.1986); United States v. Ebner, 782 F.2d 1120, 1126 (2d Cir.1986) (presumption that jury will follow limiting instructions).

Here, the Second Department did not unreasonably apply the pertinent federal law in affirming Martin's conviction. It is clear that Martin was not prejudiced by the prosecutor's misstatement for several reasons. First, the defense's contention that the prosecutor's misstatement was prejudicial was addressed by the trial judge with a curative instruction to the jury. Trial Tr. at 840-41. The curative instruction was thorough and fully addressed the issue. Second, as noted earlier, there was overwhelming evidence of the defendant's guilt. See Martin, 813 N.Y.S.2d at 209. This fact diminishes the severity of the prosecutor's misstatement. See Floyd, 907 F.2d at 355. Third, the prosecutor's misstatement was exploited by the defense, Trial Tr. at 1204-07, and could even be construed to have been detrimental to the prosecution. Id. at 741-42; 751. This fact further demonstrates the diminished severity of the prosecutor's misstatement. See Floyd, 907 F.2d at 355. In conclusion, it is clear that the Second Department's ruling was not contrary to "clearly established" federal law. See Grayton v. Ercole, No. 07-CV-0485 (SLT), 2009 WL 2876239 at *11 (E.D.N.Y. Sept. 8, 2009) (quoting Galdamez v. Keane, 394 F.3d 68, 78 (2d Cir.2005) (holding that a trial court judge's curative instruction to the jury alleviated any potential error)). Accordingly, this claim is denied.

### D. Section 440 Claims

Martin also raises three claims he originally asserted in his § 440.10 motion challenging his conviction. (Pet. at 13, 16, 21.) First, Petitioner asserts that his Fourth Amendment rights were violated, contending that there was no probable cause for his arrest. (Pet. at 13.) Second, Petitioner asserts that his Fourth Amendment rights were violated when he was compelled to

give a sample of his DNA. (Pet. at 16.) And third, Petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated, contending that his attorney did not properly object to the introduction of certain evidence by the prosecution. (Pet. at 21.) In reviewing these claims, the County Court denied Martin's § 440.10 motion, finding that Martin's claims were based entirely on the trial record and, therefore, procedurally barred under New York Criminal Procedure Law § 440.10(2)(c). (Resp't Mem. Ex. H.); County Court Order, People v. Martin, Ind. No. 684N-2002 (N.Y. Cnty. Ct., Nassau Cnty. Aug. 17, 2007).

As discussed earlier, federal habeas review is not available where a state court has rejected a constitutional claim on the basis of "adequate and independent" state law grounds. Harris, 489 U.S. at 262. "When a claim is barred on a state law ground that is both independent and adequate, the resolution of a federal question cannot affect the detention of the prisoner, and therefore 'there is nothing for the Court to do.'" Funderbird-Day v. Artuz, No. 97 Civ. 7786 (HB), 2002 WL 31427345, at *3 (S.D.N.Y. Oct. 29, 2002) (internal citations omitted).

Under New York law, state courts are prohibited from considering "record-based" claims on collateral motions. See N.Y. Crim. Proc. Law § 440.10(2)(c). A New York state court's denial to consider claims under § 440.10(2)(c) constitutes an adequate and independent state ground, barring this Court from reviewing the claims. See Funderbird-Day, 2002 WL 31427345, at *3 (concluding that a state court's denial of a collateral motion under § 440.10(2)(c) constituted an adequate and independent state ground for denying a habeas claim); Valazquez v. Poole, 614 F. Supp. 2d 284, 335 (E.D.N.Y 2007). To overcome this bar, a petitioner must show cause for a procedural default and resulting prejudice, see Wainwright, 433 U.S. at 87, or a demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." Murray, 477 U.S. at 495 (quoting Engle, 456 U.S. at 135).

18

The County Court denied Martin's § 440.10 motion because Martin's claims were entirely based on the record of the trial, an insufficient ground for collateral relief under New York Criminal Procedure Law § 440.10(2)(c). See Funderbird-Day, 2002 WL 31427345, at *3; Poole, 614 F. Supp. 2d at 335. Martin's petition has failed to show that there was cause for the procedural default, let alone any prejudice that resulted. And he has not demonstrated that failure to consider the federal claim will result in a "fundamental miscarriage of justice." Therefore, these grounds for habeas review are not permitted to be considered by this court, and Martin's claims consequently fail.

## IV. CONCLUSION

For the foregoing reasons, Martin's petition for habeas corpus is denied. A certificate of appealability will not issue because Martin has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas Garaufis

Dated: Brooklyn, New York  
July 12, 2011

NICHOLAS G. GARAUFIS  
United States District Judge